IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ⟋ D.C.

05 AUG 19 PM 12: 15

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| MARTIN McCLAIN, individually, and d/b/a MAC'S PLACE BAR & GRILL, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) ) | No. 04-2072 Ml/V |
| CITY OF MILLINGTON, TENNESSEE, a municipal corporation, TULLY REED, JERRY LADD, TROY WALLS and MICHAEL WEST, individually, and in their official capacities as police officers for the City of Millington, Tennessee, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

───────────────────────────────────────────────

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

───────────────────────────────────────────────

Before the Court is Defendants' Motion for Summary Judgment, filed May 16, 2005. Plaintiff responded in opposition on June 29, 2005. Defendants' filed a reply to Plaintiff's opposition on July 18, 2005.[1] For the following reasons, the motion is GRANTED.

---

[1] The court hereby GRANTS Defendants' Motion for Leave to File Reply in Support of Defendants' Motion for Summary Judgment, filed July 27, 2005. Although Plaintiff has contested Defendant's motion for leave to file a reply, Plaintiff has not moved to file a response to Defendant's reply.

## I.    BACKGROUND

Plaintiff, Martin McClain, was the owner and operator of a bar and restaurant called Mac's Place Bar & Grill ("Mac's Place") in Millington, Tennessee.  This case arises from Plaintiff's allegations that he was harassed by Defendants City of Millington, Tennessee, and four police officers employed by the Millington Police Department in retaliation for initiating a legal challenge to the city's beer ordinance that prevented Plaintiff from selling beer at Mac's Place on Sundays.  Plaintiff alleges that this campaign of harassment was aimed at forcing Mac's Place out of business.

The following facts are undisputed in this case: Mac's Place was located in a building owned by F.P. "Dutch" Sadlon.  Mr. Sadlon owns a liquor store located in this building and previously owned a bar called the Brass Rail which was also located in the same building.  Mr. Sadlon later leased the space in that building formerly occupied by the Brass Rail to Plaintiff, who opened Mac's Place in April of 1999.  In April of 2004, Plaintiff's lease expired and Plaintiff decided not to renew his lease.

Mac's Place operated as a restaurant serving food during the day and as a bar primarily serving alcoholic beverages after 11 p.m.  When Plaintiff began operating Mac's Place, a City of Millington ordinance prohibited the sale of beer on Sunday.  On

January 25, 2000, Plaintiff filed a lawsuit in Shelby County
Chancery Court challenging the constitutionality of the beer
ordinance. The Chancellor granted a temporary injunction which
enjoined the city police department from enforcing the beer
ordinance. On interlocutory appeal, the Tennessee Court of
Appeals reversed the Chancellor's decision in an opinion dated
October 23, 2001. In March of 2002, the City of Millington
amended the beer ordinance and, as a result, Plaintiff was able
to sell beer on Sunday. On November 20, 2002, Plaintiff
voluntarily dismissed his case in Shelby County Chancery Court.

While Mac's Place was in operation, officers employed by the
Millington Police Department periodically inspected local
businesses that sold alcoholic beverages for on-premises
consumption. While inside, officers would look around, ensure
there were no problems, check to see whether patrons behaved
appropriately, and then leave. This practice was commonly
referred to as "routining." While Mac's Place was in operation,
the Millington Police Department "routined" Mac's Place as well
as other businesses selling alcoholic beverages for on-premises
consumption, including Morrie's Tavern, the Veterans of Foreign
Wars ("V.F.W."), and the Hideaway Lounge.

Defendant Officers William Tully Reed, Jerry Ladd, Michael
West, and Troy Walls were employed by the Millington Police
Department ("MPD") at the time Plaintiff filed his Complaint.

3

These officers were assigned to work the 11 p.m. to 7 a.m. shift at some point during the period that Mac's place was in business. Other officers were also assigned to work during the 11 p.m. to 7 a.m. shift while Mac's Place was in business.

The parties offer contrasting accounts concerning the frequency and manner of Defendants' "routining" of Plaintiff's business. Plaintiff contends that Officers Reed, Ladd, West, and Walls "routined" his business with more frequency and in a different manner than they "routined" other businesses. For instance, Plaintiff alleges that those officers regularly required that Plaintiff's employees produce ID cards; pointed flash lights at Plaintiff's customers and employees; closed down pool tables at Mac's Place at 11:00 p.m.; shined spotlights into Mac's Place; parked marked police vehicles for extended periods of time on the street directly in front of Mac's Place, at a parking lot across the street from Mac's Place, and on a street that was approximately twenty feet away from Mac's Place; and regularly followed Plaintiff's employees and patrons after they left Mac's Place. Plaintiff kept a log of incidents and occurrences at his establishment from October 1999 until January of 2004, including occasions when officers including the Defendant officers entered his establishment. (Defs.' Stmt. of Mat. Facts in Supp. of Defs.' Mot. for Summ. J., Ex. 1(A).) Plaintiff further alleges that the Millington Police Department

4

had no policy or procedure concerning the manner, method, or frequency in which businesses were "routined." Moreover, Plaintiff contends that until 2005, the department had no policy and procedure manual.

Plaintiff alleges that the increased "routining" of his business occurred after he expressed his intentions to file a lawsuit challenging the City of Millington beer ordinance and that it occurred prior to when he filed his suit on January 25, 2000. According to Plaintiff, he began expressing his intent to challenge the ordinance at the time he opened Mac's Place in May of 1999. In particular, Plaintiff contends that he informed the mayor of the City of Millington, as well as other city aldermen of his intent to challenge the ordinance during 1999 and 2000. Plaintiff testified at deposition that prior to filing the lawsuit challenging the ordinance in Shelby County Chancery Court, the mayor told Plaintiff that legal action would be required in order to sell beer on Sunday and that Plaintiff would never sell beer on that day. In particular, Plaintiff also alleges that when a process server served City of Millington Mayor Harvell with a summons on or about January 24, 2000, the Mayor remarked "[t]he man has a current violation. We are going to have an emergency Beer Board meeting to suspend his license by Friday afternoon." (Aff. of Rob Etheridge, attached as unmarked

exhibit to Pl.'s Resp. to Defs.' Stmt. of Mat. Facts in Supp. of Defs.' Mot. for Summ. J.)[2]

Plaintiff states in his affidavit that he was followed numerous times by the Defendant officers and that on a number of those occasions he was pulled over.  Plaintiff further states that he was charged with driving under the influence of alcohol twice, although those charges were subsequently dismissed.  In addition, Plaintiff states that he was twice charged with public intoxication.  Those charges were similarly dismissed.  (Aff. of Martin McClain ¶ 17.)

In addition, Plaintiff states that customers complained that they were followed by Defendant officers after they left Mac's Place.  (Id. ¶ 24.)  For example, Winfred Blakenship asserts that he had been followed on at least two occasions and that as a result of those incidents, he would leave Mac's Place before 10 p.m.  (Aff. of Winfred Blakenship ¶¶ 4-5, attached as unmarked exhibit to Pl.'s Resp. to Defs.' Stmt. of Mat. Facts in Supp. of Defs.' Mot. for Summ. J.)  Moreover, Edward Zaharia states that he was followed on a number of occasions by Defendant Officer Reed after he left Mac's Place and that as a result of such incidents, he stopped going to Mac's Place.  (Aff. of Edward N.

---

[2] Plaintiff does not allege and points to no facts in the record to show that such a Beer Board meeting ever took place or that his license was ever suspended.

Zaharia ¶¶ 4, 6, attached as unmarked exhibit to Pl.'s Resp. to Defs.' Stmt. of Mat. Facts in Supp. of Defs.' Mot. for Summ. J.) Plaintiff attached the affidavit of Sonya Robbins, the owner of the Hideaway Bar, which is a local bar and restaurant in Millington, to his response to Defendants' motion.  Ms. Robbins asserts that her bar is rarely routined during the 11 p.m. to 7 a.m. shift and that officers from the Millington Police Department do not park marked police vehicles outside her business; do not shine spotlights into the Hideaway Lounge; and do not follow customers and employees after they leave the Hideaway Lounge.  (Aff. of Sonya Robbins ¶¶ 5-8, attached as unmarked exhibit to Pl.'s Resp. to Defs.' Stmt. of Mat. Facts in Supp. of Defs.' Mot. for Summ. J.)

In addition, Plaintiff contends that the individual Defendant officers also knew of Plaintiff's intent to challenge the beer ordinance.  In support of this contention, Plaintiff points to the statement of Russell Wilson, a former Lieutenant in the MPD, who asserts that prior to his retirement in February of 2000, he saw another officer, Lieutenant Jackson, hand a copy of the beer ordinance to unspecified officers working the 11 p.m. to 7 a.m. shift and heard Lieutenant Jackson tell the officers "that they were going to shut it down."  (Stmt. of Russell Wilson ¶ 7, attached as unmarked exhibit to Pl.'s Resp. to Defs.' Stmt. of Mat. Facts in Supp. of Defs.' Mot. for Summ. J.)  Lieutenant

Wilson further indicated that it was his opinion "at that time
that Lieutenant Jackson was referring to Mac's Place Bar &
Grill." (Id.)  In addition, Officer Reed testified during his
deposition that he was aware through local news coverage that
Plaintiff had filed a lawsuit against the City challenging the
ordinance and that the City was fighting Plaintiff's desire to
sell beer on Sunday. (See Dep. of William Tully Reed at 154-55,
attached as unmarked exhibit to Pl.'s Resp. to Defs.' Stmt. of
Mat. Facts in Supp. of Defs.' Mot. for Summ. J.)  Officer Reed
also gave Plaintiff a citation for his first Beer Board Violation
on January 22, 2000, just three days prior to the date Plaintiff
filed his lawsuit in the Shelby County Chancery Court.  (Dep. of
Martin McClain at 70, attached as unmarked exhibit to Pl.'s Resp.
to Defs.' Stmt. of Mat. Facts in Supp. of Defs.' Mot. for Summ.
J.)  Furthermore, a log prepared by Plaintiff tracking various
incidents occurring at Mac's Place describes an incident on
November 21, 1999, where Plaintiff disputed the applicability of
the beer ordinance with an officer who informed Plaintiff that he
could not sell beer on Sunday.  (Defs.' Stmt. of Mat. Facts in
Supp. of Defs.' Mot. for Summ. J., Ex. 1(A) at Bates # 000004.)
Defendants contend that Plaintiff's establishment was "routined"
1-2 times per week.

　　　Plaintiff's log, by which Plaintiff and his employees
recorded certain incidents that took place at Plaintiff's

establishment from October of 1999 until January of 2004,
indicates that his establishment was "routined" by MPD officers
six times from October 15 - October 31, 1999, ten times in
November of 1999, twenty-two times in December of 1999, and
fifteen times during January of 2000.  From February of 2000
until January of 2003, however, Plaintiff's log indicates that
his bar was "routined" by MPD officers not more than 3 times in
any given month, and not at all in 22 of those 40 months.
Plaintiff's log then shows that his establishment was "routined"
five times in February of 2003, and then again not more than 3
times in any month through October of 2003.  His records then
show that his establishment was "routined" thirteen times in
November and five times in December of 2003.[3]

---

[3] Plaintiff contends that upon review of the dispatch logs
of the Millington Police Department from the time period between
May of 1999 and February of 2004, the MPD conducted 89 routines
of businesses which sold liquor for on-premises consumption - 74
at Mac's Place, 4 at the Hideaway Lounge, 3 at "The Country
Junction," 6 at the V.F.W., and 0 of Morrie's Tavern.  (Aff. of
Martin McClain ¶ 10, attached as unmarked exhibit to Pl.'s Resp.
to Defs.' Stmt. of Mat. Facts in Supp. of Defs.' Mot. for Summ.
J.)  However, Plaintiff has not attached copies of the logs that
he purports to have reviewed to any of his submissions.
Accordingly, the statements in his affidavit regarding those logs
are inadmissible hearsay, and Plaintiff may not rely on them in
opposition to Defendants' motion for summary judgment. See Fed.
R. Civ. P. 56(e).  Notwithstanding the inadmissibility of
Plaintiff's statement, however, the Millington Police Department
Daily Activity Logs for the 11 p.m. to 7 a.m. shift during the
month of November of 2003 reveal that the V.F.W. was "routined" 9
times, that the Hideaway Lounge was "routined" 4 times, and that
Morrie's Tavern was "routined" 5 times just during that month.
(Defs.' Reply in Supp. of Mot. for Summ. J., Exs. 22, and 22a.)
                                                (continued...)

Defendants contend that none of the individual Defendants were aware of Plaintiff's intent to file his lawsuit challenging the City beer ordinance.  It is undisputed that Plaintiff did not tell any of the individual Defendants about his intent to file the lawsuit.  Furthermore, each individual Defendant officer contends by affidavit that he did not know of Plaintiff's intent to file suit regarding the ordinance.  (See Defs.' Stmt. of Mat. Facts in Supp. of their Mot. for Summ. J., Exs. 4-7.)

Defendants further contend that Plaintiff's business was "routined" with the same frequency as other bars in Millington. In particular, Defendants contend that Morrie's Tavern was "routined" three or four times per month, that the bar operated by the V.F.W. was "routined" several times per month, and that the Hideaway Lounge was "routined" one or two times per week. Prior to the opening of Mac's Place, the MPD "routined" the Brass Rail several times per week and often more than once on weekend nights.  Moreover, the MPD has "routined" two bars that have occupied the location where Mac's Place once operated.[4]

_____

(...continued)
Since Plaintiff, in his response to Defendants' motion to file its reply, objected to counting entries recorded with a check mark as a "routine," the Court has only considered a "routine" as having taken place where an entry indicates "RT" or "routine." Plaintiffs' hearsay assertions in his affidavit are therefore contradicted by the record before the Court.

[4] It is undisputed that one of those bars, The Final Score, was "routined" several times per week and that MPD officers
(continued...)

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1989).

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  Kochins v.

---

(...continued)
parked in areas close to that bar.  It is also undisputed that the bar currently operating at that location, Donnie Joe's, has similarly been "routined" several times per week, that MPD officers have similarly parked in nearby areas, that six customers have been stopped by the MPD after leaving the bar, and that at least one of those customers was charged with DUI.

11

<u>Linden-Alimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986); <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## III. **ANALYSIS**

Plaintiff brings this lawsuit against Defendants pursuant to 42 U.S.C. § 1983 for deprivations of his rights under the First and Fourteenth Amendments to the United States Constitution. In addition, Plaintiff alleges that Defendants committed the common law tort of intentional infliction of emotional distress. Defendants have moved for summary judgment regarding all of Plaintiffs' claims. The Court will address those claims in turn.

### A. **Section 1983**

Section 1983 does not create substantive rights, but rather serves as a "method for vindicating federal rights elsewhere conferred." <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n.3 (1979). To establish a prima facie case under § 1983, a plaintiff must prove two elements: (1) that the government action occurred "under color of law" and (2) that the action is a deprivation of a constitutional right or federal statutory right. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981); <u>Block v. Ribar</u>, 156 F.3d 673, 677 (6th Cir. 1998). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994). Plaintiff claims

that Defendants violated his rights pursuant to the First and
Fourteenth Amendments.

A municipality may be held liable under § 1983 if the
municipality itself caused a constitutional deprivation.  Monell
v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978).
Before a local governmental unit can be held liable for injuries
pursuant to § 1983, "a plaintiff must show that his injuries were
the result of some 'policy or custom' attributable to the
governmental entity."  Leach v. Shelby County Sheriff, 891 F.2d
1241, 1245 (6th Cir. 1989) (quoting Monell, 436 U.S. at 690).  A
municipality is not liable under § 1983 for an injury inflicted
solely by its employees or agents, but rather only when the
"execution of the government's policy or custom ... inflicts the
injury."  City of Canton v. Harris, 489 U.S. 378, 385 (1989).
Further, the governmental entity is liable under § 1983 only when
the entity itself is a "moving force" behind the deprivation of
constitutional rights.  Kentucky v. Graham, 473 U.S. 159, 166
(1985).

The "first inquiry in any case alleging municipal liability
under § 1983 is the question whether there is a direct causal
link between a municipal policy or custom and the alleged
constitutional deprivation."  Monell, 436 U.S. at 690.  Moreover,
the policy or custom must evidence deliberate indifference on the
part of the municipality.  Monell, 436 U.S. at 688 ("Only where

13

a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.")

### 1. First Amendment

Plaintiff contends that the individual Defendant officers and the City of Millington violated his rights under the First Amendment by "routining" his establishment excessively in retaliation for his taking steps to overturn the City of Millington's Sunday beer sales ordinance.   In order to establish a First Amendment retaliation claim, Plaintiff must show:

> (1) that [he] was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

Strouss v. Michigan Dept. of Corr., 250 F.3d 336, 345-46 (6th Cir. 2001).   Defendants assume, for the purposes of their motion, that Plaintiff has satisfied the first two elements but that he fails to point to evidence in the record to support his contention that Defendants' "routining" of his establishment was motivated as a response to the exercise of his constitutional rights.

In order to prove that his protected activity was a motivating factor in Defendants' alleged harassment, Plaintiff

14

must "point to specific, nonconclusory allegations reasonably linking [his] speech" to Defendants' alleged harassment.  Farmer v. Cleveland Public Power, 295 F.3d 593, 602 (6th Cir. 2002)(citation omitted).  The fact that the alleged harassment "occurred after the exercise of free speech, without more, is insufficient to establish the link that is central to a First Amendment retaliation claim." Id. (citation omitted).  A burden shifting scheme applies to the third element of the test.  In particular, to satisfy the third element:

> [P]laintiff must proffer evidence sufficient to raise the inference that his or her protected activity was a motivating factor for the adverse decision. Circumstantial evidence, like the timing of events or the disparate treatment of similar individuals, may support this inference.  Once a plaintiff has met his or her burden of establishing that his or her protected conduct was a motivating factor behind the adverse conduct, the burden of production shifts to the defendant.  If the defendant can demonstrate that it would have taken the same action in the absence of the protected activity, it has met its burden and is entitled to summary judgment if it can show affirmatively that there is no genuine issue in dispute.

Tucker v. City of Richmond, Ky., 388 F.3d 216, 220 (6th Cir. 2004)(citing Arnett v. Myers, 281 F.3d 552, 560-61 (6th Cir. 2002)).  "[S]ummary judgment for the defendant is proper only if the evidence is such that every reasonable juror would conclude that the defendant met its burden of showing that it would have taken the same action even in the absence of the protected conduct." Id. (citing Arnett, 281 F.3d at 552).

15

Having reviewed the record and the parties' submissions, the Court finds that Plaintiff has failed to point to sufficient evidence in the record to create a genuine issue of material fact regarding whether any alleged harassment was motivated by his challenge to the city ordinance. Plaintiff contends that it was common knowledge that he intended to challenge the ordinance before January of 2000. However, in order to show that the alleged excessive "routining" that occurred prior to Plaintiff's filing suit in January of 2000 was motivated by the exercise of his First Amendment rights, Plaintiff must point to specific evidence in the record to show that the officers' were aware of his protected activity. It is undisputed that Plaintiff did not tell any of the individual Defendant officers of his intention to challenge the ordinance. Moreover, each officer has filed a sworn affidavit stating that he was not aware of Plaintiff's intent to file suit regarding the ordinance until Plaintiff actually filed the suit. In addition, although Plaintiff submits evidence that Lt. Wilson overheard another officer handing officers on the 11 p.m. to 7 a.m. shift a copy of the ordinance and stating that they were going to shut it down - which he took to mean Plaintiff's establishment - Plaintiff points to no evidence in the record to show that any of the individual

16

Defendant officers were present to hear that comment.[5]  Moreover, although the mayor and city aldermen knew of Plaintiff's intention to challenge the ordinance, their knowledge cannot be imputed to the individual Defendant officers without some indication that the mayor or aldermen communicated the information to the officers.[6]  Additionally, Plaintiff's own records show that, subsequent to his filing suit on January 25, 2000, at which point the individual Defendant officers likely knew of his intention to challenge the ordinance, the "routining" of his establishment actually decreased.[7]

Even assuming that Plaintiff could establish that the individual Defendant officers knew of his protected activity

---

[5] Even assuming that the individual Defendant officers were present to hear that comment, however, the comment itself does not necessarily indicate that Plaintiff intended to or was in the process of challenging the ordinance.

[6] Although Plaintiff contends that Defendant Officer Reed knew that the city was "fighting Martin McClain's desire to sell beer on Sundays," Officer Reed's deposition indicates that his knowledge of that fact came from local newspapers and Plaintiff points to no evidence that Officer Reed knew of that fact before Plaintiff filed suit against the city. (See Dep. of William Tully Reed at 154-55, attached as unmarked exhibit to Pl.'s Resp. to Defs.' Stmt. of Mat. Facts in Supp. of Defs.' Mot. for Summ. J.) Plaintiff, in fact, points to one such newspaper article, which is dated January 26, 2000, after Plaintiff filed his suit. ("Millington bar-grill sues on beer sales," THE COMMERCIAL APPEAL, January 26, 2000, attached as unmarked exhibit to Pl.'s Resp. to Defs.' Stmt. of Mat. Facts in Supp. of Defs.' Mot. for Summ. J.)

[7] Plaintiff's log indicates that, from February of 2000 until January of 2003, his establishment was "routined" not more than three times per month.

prior to his filing suit and that Defendants' conduct was
motivated by such activity, however, Plaintiff's claim of First
Amendment retaliation is separately and independently barred
because it is untimely.   In actions brought under federal civil
rights statutes, state law governs the duration of the statute of
limitations.   Sharpe v. Cureton, 319 F.3d 259, 266 (6th Cir.
2003).   Under Tennessee law, there is a one year statute of
limitations for federal civil rights claims.   Tenn. Code. Ann. §
28-3-104(a)(3).   Generally, the statute of limitations begins to
run on "the date when the plaintiff knew or through the exercise
of reasonable diligence should have known of the injury that
forms the basis of his action."   Id.   This is an objective test
whereby the Court determines "'what event should have alerted the
typical lay person to protect his or her rights.'"   Id.
Defendants contend that Plaintiff's claims are untimely because
he filed his action long after the alleged harassment began.
Plaintiff contends that Defendants' harassment was continuing
from October of 1999 until February of 2004 and therefore that
his claims are timely.

   In order to establish that a continuing violation occurred,
Plaintiff must show that the Defendants' alleged harassment is
indicative of a pattern of similar discriminatory acts continuing
from the period prior to the expiration of the limitations period
until the last alleged incident of harassment.   See Weigel v.

<u>Baptist Hosp. of East Tennessee</u>, 302 F.3d 367, 376-77 (6th Cir. 2002)(defining continuing violation in the context of an ADEA claim).  The violation within the limitations period must be "sufficiently similar or related to the time-barred acts, such that it can be said that the acts are all part of the same pattern of discrimination."  <u>Id.</u> (citation omitted).  The discriminatory conduct must also be continuous or ongoing.  <u>Id.</u>

In response to Defendants' contention that Plaintiff's First amendment retaliation claim is untimely, Plaintiff points to the log that he kept of activities in his establishment.  (See Pl.'s Mem. in Resp. to Defs.' Mot. for Summ J. at 13.)  That log shows that Plaintiff's establishment was "routined" frequently in November and December of 1999 and January of 2000.  Given the timing of Plaintiff's suit challenging the ordinance and assuming that the officers knew of Plaintiff's intent to challenge the ordinance prior to filing suit, that frequent "routining" could support an inference that it was motivated by Plaintiff's protected activity.[8]  However, Plaintiff's own records show that the frequency of "routining" decreased greatly beginning in February of 2000 and remained infrequent for nearly three years until January of 2003. (See Defs.' Stmt. of Mat. Facts in Supp.

---

[8] Because neither party has submitted police logs from November 1999 through January of 2000, it is not possible for the Court to determine whether the frequent "routining" during those months was experienced by other establishments in Millington as well.

of Defs.' Mot. for Summ. J., Ex. 1(A).)   Moreover, in March of 2002, the City of Millington amended the beer ordinance and, as a result, Plaintiff was able to sell beer on Sunday.  Additionally, on November 20, 2002, Plaintiff voluntarily dismissed his case in Shelby County Chancery Court.  As of that time, Plaintiff's protected activity had ended.  Plaintiff filed his Complaint in this case on February 6, 2004, over one year after he voluntarily dismissed his Chancery Court suit.

Given those undisputed facts, Plaintiff fails to point to sufficient evidence in the record to show that the alleged harassment that he received was ongoing and motivated by his constitutionally protected activity from the time he filed his suit challenging the ordinance until at least February 6, 2003, one year before Plaintiff filed his Complaint.  Additionally, the evidence shows that Plaintiff's protected activity ceased over one year prior to the filing of the instant Complaint. Plaintiff's claim of First Amendment retaliation is therefore untimely.  Accordingly, Defendants' motion for summary judgment is GRANTED and Plaintiff's claim of First Amendment retaliation pursuant to § 1983 is DISMISSED.

### 2. Fourteenth Amendment

In his Complaint, Plaintiff asserts three separate theories by which Defendants violated his rights pursuant to the Fourteenth Amendment.  First, Plaintiff contends that Defendants

violated his right to operate his business in accordance with the
laws and thereby pursue his chosen occupation; second, Plaintiff
contends that his business was selectively "routined" in
violation of the Equal Protection Clause; and third, he contends
that Defendant City of Millington failed to adequately train and
supervise the individual officer Defendants in violation of his
rights under the Due Process Clause.  (Pl.'s Compl. ¶ 11.)
Defendants contend that summary judgment is appropriate with
respect to each of these claims because they fail on their merits
and because the individual Defendant Officers are entitled to
qualified immunity from suit.  The Court will address those
contentions in turn.

### i. Freedom to Choose and Pursue a Career

Plaintiff contends that the alleged harassment he received
deprived him of his liberty interest in pursuing his profession
as a bar owner.  The Sixth Circuit has recognized that the
"freedom to choose and pursue a career ... qualifies as a liberty
interest which may not be arbitrarily denied by the State."
Wilkerson v. Johnson, 699 F.2d 325, 328 (6th Cir. 1983).
However, such claims generally relate to situations where
"governmental institutions regulate careers or occupations in the
public interest through the licensing process, their definitions
of rights in a license or [an]other statutory entitlement [that]
may give rise to competition rights and constraints that define

21

property interests." Id. (citations omitted).  Plaintiff does not

allege that he was denied the right to a license to operate an

establishment serving alcohol or that his license to operate such

an establishment was ever revoked.  Moreover, when an individual

remains free to pursue his chosen occupation, no claim for the

deprivation of the freedom to choose a career exists. See Parate

v. Isibor, 868 F.2d 821, 831-32 (6th Cir. 1989)(affirming

dismissal of claim of denial of liberty interest in pursuing

profession where individual was free to pursue his profession

with other employers).[9]  Plaintiff does not contend that he has

been prevented from opening or operating any establishment since

he ceased to operate Mac's place.  Accordingly, Plaintiff's

allegations fail to state a claim for the deprivation of his

liberty interest in pursuing a particular career.

Even assuming that Plaintiff's allegations did state a claim

for the deprivation of his freedom to choose and pursue a career,

however, the Court finds that Plaintiff has failed to point to

sufficient evidence to create a genuine issue of material fact

regarding such a claim.  Two factors relevant to the analysis of

whether Plaintiff was deprived of his freedom to choose a career

are the nature and seriousness of the infringement and the

---

[9] In fact, the Court in Parate specifically distinguished
Wilkerson on the basis that Wilkerson involved the prevention of
an individual from entering a profession by withholding a license
rather than the enforcement of rules and regulations to
individuals presently engaging in the profession.

strength of the justifications given. <u>Wilkerson</u>, 699 F.2d at 328.
Here, the nature of the infringement was the "routining" of
Plaintiff's establishment as well as other establishments serving
alcohol.  The justification for "routining" is to protect public
safety.  Having considered these factors, the Court finds that
Defendants are entitled to judgment as a matter of law regarding
Plaintiff's claim for the deprivation of his freedom to choose
and pursue a career.  Accordingly, Defendants' motion for summary
judgment is GRANTED and Plaintiff's claim that Defendants
deprived him of his liberty interest in pursuing his profession
is DISMISSED.

### ii. Equal Protection

     Plaintiff also contends that his establishment was
selectively "routined" in violation of the Equal Protection
clause.  The Equal Protection Clause provides that no state shall
"deny to any person within its jurisdiction the equal protection
of the laws."  U.S. CONST. amend. XIV, § 1.  "To state a claim
under the Equal Protection Clause, a § 1983 plaintiff must allege
that a state actor intentionally discriminated against the
plaintiff because of membership in a protected class' or burdened
a fundamental right."  <u>Midkiff v. Adams County Reg'l Water Dist.</u>,
409 F.3d 758, 770 (6th Cir. 2005) (quoting <u>Purisch v. Tennessee
Tech. Univ.</u>, 76 F.3d 1414, 1424 (6th Cir. 1996)).  "[W]here no
suspect class or fundamental right is implicated, this Court must

apply rational basis review. Id. (citation omitted). "Under
rational basis review, the governmental policy at issue will be
afforded a strong presumption of validity and must be upheld as
long as there is a rational relationship between the disparity of
treatment and some legitimate government purpose." Id. (internal
citations and quotations omitted). To prevail on a claim under
rational basis review, Plaintiff must "negate all possible
rational justifications" for the disparity of treatment." Id.

Plaintiff does not allege, nor does he point to any evidence
in the record, that he was discriminated against due to his
membership in any protected class or that any fundamental right
was burdened. Moreover, even assuming that Plaintiff's
establishment was "routined" more often than other establishments
pursuant to an official policy to do so, a rational basis exists
for that distinction given the importance of "routining" to
public safety. Accordingly, Defendants' motion for summary
judgment is GRANTED and Plaintiff's Equal Protection claim is
DISMISSED.

### iii. Failure to Train

Plaintiff also contends that Defendant City of Millington
failed to adequately train and supervise the individual officer
Defendants in violation of his rights under the Due Process
Clause. A municipality's failure to train can be the basis for
liability under § 1983, but only in limited circumstances. City

of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989).  To

establish liability under Canton, Plaintiff must prove: (1) that

the training program at issue is inadequate to the tasks that the

officers must perform; (2) that the inadequacy is the result of

the city's deliberate indifference to the rights of persons with

whom the police came into contact; and (3) that the inadequacy is

closely related to or actually caused Plaintiff's injury.  Russo

v. City of Cincinatti, 953 F.2d 1036, 1046 (6th Cir. 1992)

(citations omitted);  Canton, 489 U.S. at 388.[10]

Plaintiff contends that the Millington Police Department's

failure to maintain a specific policy regarding "routining"

_____

[10] The issue in a failure to train case is whether the
training program is adequate, and if not, whether such inadequate
training can justifiably be said to represent county policy.
Canton, 489 U.S. at 390; Russo, 953 F.2d at 1046.  As the Court
noted in Canton, where:

> in light of the duties assigned to specific officers or
> employees the need for more or different training is so
> obvious, and the inadequacy so likely to result in the
> violation of constitutional rights, that the
> policymakers of the city can reasonably be said to have
> been deliberately indifferent to the need ... the
> failure to provide proper training may fairly be said
> to represent a policy for which the city is
> responsible, and for which the city may be held liable
> if it actually causes injury.

Canton, 489 U.S. at 390.  Continued adherence to a program that
the municipality knew or should have known did not prevent
tortious conduct by employees can also establish the "deliberate
indifference" necessary to trigger municipal liability.  Brown,
520 U.S. at 407.  The existence of a pattern of tortious conduct
by inadequately trained employees may tend to show that a lack of
proper training is the "moving force" behind Plaintiff's injury.
Brown, 520 U.S. 397, 407-08 (1997).

combined with the alleged harassment he received by the
individual Defendant Officers supports his claim that the City of
Millington is liable for damages due to its failure to train its
officers.  Having reviewed the record and the parties
submissions, however, the Court finds that Plaintiff fails to
point to sufficient evidence to create a genuine issue of
material fact regarding whether the City of Millington is liable
for any failure to train its officers.  The mere fact that the
city does not have a written policy regarding "routining" does
not, by itself, establish that the city is liable under § 1983
for the failure to train its employees.  Plaintiff points to no
evidence in the record to show that the training that the
officers received was inadequate to the tasks that the officers
must perform, that any inadequacy was a result of the city's
deliberate indifference to Plaintiff's rights, or that any
inadequacy is closely related to or actually caused Plaintiff's
injury.  Rather, the record reflects that the tactic of
"routining" was practiced with respect to other establishments in
Millington generally without incident.  Accordingly, Defendants'
motion for summary judgment is GRANTED and Plaintiff's claim that
the City of Millington failed to properly train its employees is
DISMISSED.

### iv. Qualified Immunity

Even assuming that Plaintiff's claims survived summary judgment, the individual Defendant Officers are entitled to qualified immunity from suit regarding Plaintiff's § 1983 claims pursuant to the Fourteenth Amendment.  The doctrine of qualified immunity protects government officials who perform discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Beard v. Whitmore Lake School Dist., 402 F.3d 598, 602-03 (6th Cir. 2005)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In Beard, the United States Court of Appeals for the Sixth Circuit described the three part test for determining whether a grant of qualified immunity is proper:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.  Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

Id. at 603 (citing Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900-01 (6th Cir. 2004)).  "If the answer to all three questions is yes, then qualified immunity is not proper." Id. (citing Champion, 380 F.3d at 901).

27

The Court has found that the individual Defendant Officers did not violate Plaintiff's rights pursuant to the Fourteenth Amendment.  Accordingly, the individual Defendant Officers are entitled to qualified immunity on that basis.  Even were Plaintiff to have proven that the individual Defendant Officers violated his clearly established constitutional rights, those claims, however, the Court finds that the actions of the officers were objectively reasonable in light of the public safety concerns underlying their conduct.

In determining whether an officer's actions were objectively reasonable, "individual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the plaintiff's constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendants' position would understand that what he did violated those rights." O'Brien v. City of Grand Rapids, 23 F.3d 990, 999 (6th Cir. 1994)(citing Anderson v. Creighton, 483 U.S. 635, 638-39 (1987)).  An officer will be immune "if officers of reasonable competence could disagree" regarding whether the conduct violated the plaintiff's rights. Pray v. City of Sandusky, Ohio, 49 F.3d 1154, 1158 (6th Cir. 1995)(citing Malley v. Briggs, 475 U.S. 335, 349 (1986)); O'Brien, 23 F.3d at 999.

Here, the undisputed evidence indicates that the individual Defendant officers "routined" Plaintiff's establishment as well

28

as other establishments in order to protect the public safety.
The Court therefore finds that it was not objectively
unreasonable for the individual Defendant Officers to have
"routined" Plaintiff's establishment.  Accordingly, the motion
for summary judgment on behalf of the individual Defendant
Officers on the basis of qualified immunity is GRANTED and
Plaintiff's § 1983 claims pursuant to the Fourteenth Amendment
are DISMISSED.

### v. Official Capacity Claims

Plaintiff also sues the four individual Defendant Officers
in their official capacities.  In an official capacity action,
the plaintiff seeks damages from the entity for which the officer
is an agent, rather than the individual officer.  Pusey v. City
of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993)("[A]n official-
capacity suit is, in all respects other than name, to be treated
as a suit against the entity."(quoting Kentucky v. Graham, 473
U.S. 159, 166 (1985)).  Accordingly, Plaintiff's claims for
damages against the individual Defendant officers in their
official capacity must be construed as claims against Defendant
City of Millington.  Because the City of Millington is already a
Defendant in this action, however, Plaintiff's official capacity
claims against the individual Defendant Officers are DISMISSED.
Additionally, because the Court has dismissed Plaintiff's

substantive federal claims, all Plaintiff's claims against Defendant City of Millington are DISMISSED.

### B. State Law Claims

Having granted Defendant's motion for summary judgment regarding all of Plaintiff's federal claims, the Court exercises its discretion to decline to assert supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's state law claims against Defendants are hereby DISMISSED.

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment.

So ORDERED this 18 day of August, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

30

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 65 in case 2:04-CV-02072 was distributed by fax, mail, or direct printing on August 19, 2005 to the parties listed.

---

Rex L. Brasher
BROWN BRASHER & SMITH
5100 Poplar Avenue
Ste. 2515
Memphis, TN 38137

Todd Allen Snow
HANOVER WALSH JALENAK & BLAIR
22 N. Front Street
5th Floor
Memphis, TN 38103--210

Edward J. McKenney
HARRIS SHELTON HANOVER WALSH, PLLC.
One Commerce Square
Ste. 2700
Memphis, TN 38103--255

David A. Lumb
PLEASANTS LAW FIRM
8 S. Third St.
Ste. 200
Memphis, TN 38103

Michael F. Pleasants
PLEASANTS LAW FIRM
8 S. Third St.
Ste. 200
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT